UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IMPERIAL TRADING CO., INC., ET AL. | CIVIL ACTION |
| VERSUS | NO: 06-4262 |
| TRAVELERS PROPERTY CASUALTY CO. OF AMERICA | SECTION: R |

### ORDER AND REASONS

Before the Court are plaintiffs' motion for partial summary judgment as to burdens of proof and segregating damages (R. Doc. 119) and defendant's motion for partial summary judgment as to plaintiffs' claim for damage to contents at its Airline Drive location (R. Doc. 113). For the following reasons, plaintiffs' motion is GRANTED and defendant's motion is DENIED.

**I. Background**

The plaintiffs in this case are the owners and lessees of commercial properties that were damaged during Hurricane Katrina. At the time of the hurricane, the properties in question were insured by defendant Travelers Property Casualty Company of America. Plaintiffs submitted a claim to Travelers shortly after the hurricane, and Travelers advanced plaintiffs $1 million for the covered losses to one property on September 25, 2005. Plaintiffs claim that Travelers failed to participate in the adjustment process in good faith after that point, reimbursing

plaintiffs for portions of the covered loss in small increments over the following year but denying coverage for several claims falling under the coverage of the policy.

Only one of plaintiffs' claims is at issue in this Order. Plaintiffs – specifically AMA Distributors, Inc. and Lucky Coin Machine, Inc. – argue that the insurance policy they had with defendant provides coverage for damage to stock held at the building on Airline Drive in Metarie, Louisiana. Plaintiffs claim that business personal property and stock consisting of a large number of video poker and other gaming machines were damaged or destroyed by Hurricane Katrina, which totaled a loss of more than $8 million. This stock was located in a large, windowless warehouse at the Airline Drive location, which was heavily damaged by Hurricane Katrina before being inundated with flood waters from the failure of the 17th Street Canal levee.

**II. Legal Standard**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a

reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish the existence of a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. Discussion**

**A. Burden Allocation**

Plaintiffs move for partial summary judgment on the allocation of burdens of proof when an insured claims that a particular loss falls under the coverage of an insurance policy.

Here, plaintiffs ask this Court to rule that, once an insured has proven loss under an "all risks" or "open peril" insurance policy, the insurer bears the burden of showing that the loss falls into a policy exclusion. They additionally suggest that the insurer has the further burden of segregating between covered and excluded losses. Defendant agrees that an insurer must prove that a loss falls into an exclusion, but argues that the *insured* bears the burden of segregating between covered and non-covered losses.

When sitting in diversity, as this Court is, the controlling substantive law is state law. *Trinity Universal Ins. Co. v. Stevens Forestry Serv., Inc.*, 335 F.3d 353, 356 (5th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). In this case, the applicable state is Louisiana. The parties agree that Louisiana law is clear as to which party must demonstrate whether the loss is excluded, and so it is. "The insurer bears the burden of proving the applicability of policy exclusions." *Comeaux v. State Farm Fire and Cas. Co.*, 986 So.2d 153, 158 (La. Ct. App. 2008); *accord Grilletta v. Lexington Ins. Co.,* 558 F.3d 359, 364 (5th Cir. 2009); *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000). Because the parties agree on this accurate point of law, more need not be said about it.

The parties disagree, however, on who bears the burden of segregating covered from non-covered losses once an insurer shows

4

that an exclusion applies to some loss. The Fifth Circuit has spoken on this point in *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290 (5th Cir. 2009). The court in that case applied Louisiana law to circumstances in which property had been damaged by both covered and excluded causes. In those circumstances, the court held that once the insured shows that the claim is covered by the policy, the burden shifts to the insurer to prove how much of the damage was caused by a non-covered cause and was thus excluded from coverage under its policy. *Id*. at 295.[1] Although defendant suggests that the Fifth Circuit's language was inadvertent, that argument is belied by the following language, quoted in context, of the court's decision on the burden-of-proof issue:

> On appeal, Lexington asserts that there was insufficient evidence presented at trial to support the finding that wind, rather than flooding, caused most of the damage to Dickerson's home. As wind damage is covered by Dickerson's homeowner's policy but flood damage is not, Lexington would not be liable for any damage attributable to flooding. No one disputes that, in addition to flooding, both wind and rain caused damage, but the parties disagree on the proper apportionment of the causes of the damage between flooding and wind.
>
> Under Louisiana law, the insured must prove that the claim asserted is covered by his policy. Once he has done this, the *insurer has the burden of demonstrating*

---

[1] Plaintiffs also point to *[Norman] Broussard v. State Farm Fire and Cas. Co.,* No. 1:06CV6 LTS-RHW, 2007 WL 113942 (S.D. Miss. Jan 17, 2007), *rev'd on other grounds*, 523 F.3d 618 (5th Cir. 2008), which is inapplicable to the case before the Court because it was decided under the law of Mississippi, not the law of Louisiana.

5

> *that the damage at issue is excluded from coverage.*
> Thus, once Dickerson proved his home was damaged by
> wind, the burden shifted to Lexington *to prove that
> flooding caused the damage at issue*, thereby excluding
> coverage under the homeowner's policy. As no one
> disputes that at least some of the damage to the
> Dickerson home was covered by the homeowner's policy,
> Lexington *had to prove how much of that damage was
> caused by flooding* and was thus excluded from coverage
> under its policy.

*Id*. at 294-95 (emphasis added). The court could not have been clearer in its holding. It said twice in the same paragraph that when the "proper apportionment" of covered and excluded losses was at issue, the insurer had to prove that "the damage at issue is excluded." The insurer therefore must show "how much of the damage" was caused by an excluded peril.

Although some other Courts in this District do not regard *Dickerson* as controlling, *see, e.g., Weiser v. Horace Mann Ins. Co.*, No. 06-9080, slip op. at 8 n.21 (E.D. La. April 6, 2009) (expressing "doubt that the Fifth Circuit actually altered the state of the law" in *Dickerson*); *Adams v. Lexington Ins. Co.*, No. 06-11388, 2009 WL 362446, at *3 (E.D. La. Feb. 11, 2009) (characterizing the *Dickerson* language as "dicta"), this Court respectfully disagrees. Some courts view the Fifth Circuit's language as unnecessary to the decision. The *Dickerson* language, however, was a straightforward statement of the legal standard the court determined to be applicable to the issue before it.[2]

---

[2] This Court accordingly does not view the *Dickerson* language as dicta, *contra Adams*, 2009 WL 362446, at *3, because

6

Other courts in this District have stated that *Dickerson* did not intend to "alter the state of [Louisiana] law." *Weiser*, No. 06-9080, slip op. at 8 n.21. While this Court relied on Louisiana authorities before *Dickerson* to reach a result opposite than the one reached here, the Court finds that the Supreme Court of Louisiana has not decided the apportionment issue. *Swindle v. Md. Cas. Co.*, 251 So. 2d 787, 791 (La. Ct. App. 1971), a case often cited for the pre-*Dickerson* burden-shifting proposition, held that once the insurer had established its affirmative defense of arson under a fire insurance policy, the insured bore the burden of rebutting the insurer's evidence. This case, however, provides no instruction as to whether or not an insurer must prove the scope of the damages subject to an asserted exclusion. The issue in *Swindle* was whether arson was or was not the unitary cause of a fire. The court said that arson was an "affirmative defense," 251 So. 2d at 791, and an affirmative

---

it is not irrelevant to the holding. After setting forth the burden allocation, the Fifth Circuit noted that the insured presented evidence segregating damages, and that the insurer's expert "attempted to deconstruct [the insured's] expert's estimate by identifying individual components of the damage and assigning their cause to either flood or wind." *Dickerson*, 556 F.3d at 295. In other words, the insurer presented evidence segregating covered from non-covered losses, despite the fact that the insured did as well. The court went on to note that "the quantity and quality of the evidence adduced by each party was similar," and that the issue was ultimately decided upon witness credibility. *Id*. The insurer's segregation of damages thus failed to persuade the factfinder. This does not mean that the insurer did not bear the burden of segregating between covered and excluded damage.

defense is a defense raising new matter that would foreclose coverage even if the allegations of the complaint were true. *See* BLACK'S LAW DICTIONARY 482 (9th ed. 2009). The court's language simply meant that since the defendant's evidence on this matter was not part of the plaintiff's case, the plaintiff would lose if it did not rebut it. But the court made clear that the defendant had the burden of proving the entirety of its affirmative defense. *Swindle* did not hold that once an insurer points to any excluded loss, the entire loss is excluded unless the plaintiff can prove otherwise.

Further, *Jones v. Estate of Santiago*, 870 So. 2d 1002, 1010-1011 (La. 2004), cited often in burden-shifting cases, articulates the burden-shifting standard for summary judgment, not the standard for what a defendant must do to prove an exclusion. *See also Waldrip v. L.Y.*, 954 So. 2d 856, 858 (La. Ct. App. 2007) (articulating the burdens for summary judgment). *Estate of Santiago* addressed whether the intentional-act exclusion of a homeowner's policy precluded coverage for a shooting. The plaintiff claimed the shooting was accidental. When the defendant moved for summary judgment, the court described the applicable burdens: "The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving

party to present evidence demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Estate of Santiago*, 870 So. 2d at 1006. The court further noted that "[w]hen a motion for summary judgment is made and not supported, the adverse party may not rest on the allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1007.

The court concluded that the insured failed to meet its burden on summary judgment. "Based on our review of the record, we conclude that defendant made a *prima facie* showing that the motion should be granted." *Id*. at 1010. Accordingly, "the burden shifted to the plaintiff to present evidence demonstrating there remained a material issue of fact as to whether the shooting was accidental such that the exclusion did not apply." *Id*. at 1010-11. Based on this burden allocation, the *Estate of Santiago* court found that no reasonable person could conclude that the shooting was accidental. *Id*. The court made no determination that an insurer need not prove the scope of the damage to which its exclusion purportedly applies when it seeks to prove a defense to coverage.

In sum, defendant has pointed to nothing to indicate that the Fifth Circuit's opinion in *Dickerson* is not controlling.

9

Accordingly, plaintiffs' motion for partial summary judgment on burdens of proof is GRANTED.

**B. Contents at the Airline Drive Location**

This Court follows the burdens of proof as set forth above. The parties agree that such stock was covered by the insurance policy and that it was damaged. The policy notes that the insurer "will pay for direct physical loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss." "Covered Cause of Loss" is defined as "risks of direct physical loss" unless the loss falls into a particular exclusion. (R. Doc. 113, Ex. A-1 at TRAVPOL000022.) "Stock" is included among the Covered Property section, and is defined elsewhere as "merchandise held in storage for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping." (*Id*. at TRAVPOL000040.)

The defendant, acknowledging that the plaintiffs have carried their initial burden, argues that the damage falls into a policy exclusion. The policy states that defendant "will not pay for loss or damage caused directly or indirectly" by any excluded cause listed in the policy. (*Id*. at TRAVPOL000030.) "Water" is one such exclusion, and it is relevantly defined as "[f]lood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not." (*Id*.

10

at TRAVPOL000031.)

The parties do not dispute that the Airline Drive location suffered heavy flooding from the levee breaks following the landfall of Katrina. Defendant, however, when showing that a loss falls within a policy exclusion, must also carry the burden of "how much of the damage" was subject to the exclusion. *Dickerson*, 556 F.3d at 295. It is not enough to point to the mere existence of *some* floodwater to carry this burden. Under *Dickerson*, an insurer must also make a specific showing of what damage was caused by the excluded cause.

Defendant has proceeded on its motion under the impression that the *Dickerson* burden allocation is not binding on this Court, and it thus has not presented evidence demonstrating that there is no genuine issue of material fact existing for trial. Even if defendant argues that *all* the damage to the contents at the Airline Drive location was excluded, plaintiffs have submitted sufficient evidence to preclude summary judgment.

Specifically, plaintiffs present the deposition evidence of two witnesses who arrived at the Airline Drive location before the breakage of the levees. Both witnesses testified as to broken and open thresholds in the building – specifically, the front windows and a rear overhead door – that could allow for rainwater to enter the building. (R. Doc. 141, Ex. A & B.) Expert testimony presented by plaintiffs attests that 565 gallons

11

of water actually did enter the building through the broken windows and 1,717 gallons through the broken rear door. (R. Doc. 113. Ex. N.) Deposition evidence further indicates that wind-driven rainwater may have penetrated nearly one-third of the way into the building. (R. Doc. 141, Ex. E.) Furthermore, two witnesses testified as to roof damage that would allow water to leak through into the building. (R. Doc. 141, Ex. E & G, R. Doc. 113, Ex. M.) Lastly, a deposition witness for the plaintiff testified that a water pipe located in the ceiling of the building burst, releasing approximately 300,000 gallons of water. (R. Doc. 113, Ex. M.) This evidence is sufficient to create a genuine issue of material fact for trial. Accordingly, defendant's motion for summary judgment as to plaintiffs' claim for damages to contents at the Airline Drive location is DENIED.

**IV. Conclusion**

Plaintiffs' motion for partial summary judgment on burden shifting and segregation of damages is GRANTED. Defendant's motion for partial summary judgment as to contents at the Airline Drive location is DENIED.

**New Orleans, Louisiana, this \_\_\_15th\_\_\_ day of July, 2009.**

**SARAH S. VANCE
UNITED STATES DISTRICT JUDGE**