UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IMPERIAL TRADING CO., INC., ET AL. | CIVIL ACTION |
| VERSUS | NO: 06-4262 |
| TRAVELERS PROPERTY CASUALTY CO. OF AMERICA | SECTION: R |

**ORDER**

Before the Court is one of many Motions in Limine filed in this case. In the current motion, plaintiffs seek to exclude the expert testimony and report of Robert K. Kochan and Dr. Rita Schnipke. The Court has reviewed plaintiffs' motion and the experts' reports and finds no basis for exclusion.

**I. Background**

The parties dispute the amount of hurricane wind and wind-driven rain damage to a building located at 1525 Airline Drive. The parties also disagree over the amount of damage potentially caused by a broken water pipe on the property. Defendants argue that such damage was minimal. In support, they retained the services of Robert K. Kochan, a mechanical engineer, to opine on the following:

> (i) the amount of wind blown rainwater that may have been capable of entering the front and rear openings at the Airline Drive building during the development, onset and peak winds and passing of Hurricane Katrina; (ii) the potential disruption of any wind and water that may have entered the Airline Drive building front and rear; and (iii) the potential for a damaged/broken water pipe to flood a significant portion of the Airline Drive building.

Based on pictures, floor plans, and an inspection of the property, Kochan's firm created a three-dimensional computer model of the Airline building. Kochan provided this model along with meteorological data to Dr. Schnipke and asked her to conduct computational fluid dynamic analysis. From Dr. Schnipke's analysis and other data, Kochan concluded that "the most accurate answer to the question of whether or not this loss occurred as a result of wind borne rain induced flooding, is unequivocally, no." Kochan also opined that "only a limited amount of water would have been able to accumulate on the floor unconstrained by any tight barriers during the short period of time after the pipe may have broken and before the flood waters began filling the full building structure."

**II. Legal Standard**

Federal Rule of Evidence 702 gives the district court considerable discretion to admit or exclude expert testimony. *See General Electric Co. v. Joiner*, 522 U.S. 136, 151 fn. 1 (1997). Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education," may

testify when scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. For the testimony to be admissible, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 593. The aim is to exclude

expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590. Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence, in other words, whether it is relevant. *See id.* at 591.

**III. Analysis**

    *i.   Rule 26*

Plaintiffs first argue that Kochan's and Dr. Schnipke's "reports do not provide the data and calculations required by Rule 26." Local Rule 26.3E states that "the scope and time of disclosures under FRCvP26(a)(2) and FRCvP(a)(3) shall be as directed by the court in the [scheduling] order issued after the preliminary conference." The scheduling orders in this case require that expert reports "fully set[] forth all matters about which [the expert] will testify and the basis thereof." (R. Doc. 7, 23.)

In this case, both Kochan's and Dr. Schnipke's reports adequately set forth the subject and bases for their opinions. Kochan's eighteen-page report lists his sources of data, including wind data from experts at the National Hurricane Center and Dr. Schnipke's computational fluid dynamic analysis, as well as several pages of formulas and calculations used by Kochan to reach his conclusions. Similarly, Dr. Schnipke's report lists

the values of variables, such as "Avg. cloud height" and "terminal velocity," that she uses to make her "Total Mass Faction of Water in Air" and other calculations.

Because both Kochan's and Schnipke's reports "fully set[] forth all matters about which they will testify and the basis thereof," the Court will not exclude their reports for failure to comply with the disclosure requirements of Rule 26.

    *ii. Schnipke's "Supplemental Report"*

Defendants recently submitted a "supplemental report" by Dr. Schnipke in response to plaintiffs' objections that Schnipke's initial report contains computational errors and lacks details explaining her analysis. The "supplemental report" is, in fact, a new report that is not only more extensive than the original, but it also contains a new opinion. (*Compare* R. Doc. 161, Ex. D *with* R. Doc. 222, Ex. A.) It does not simply correct immaterial errors as defendant asserts. Specifically, page seventeen contains the results of a rain penetration analysis that estimates a "rain penetration droplet distance of 16 ft. max." From this analysis, Dr. Schnipke concludes that "rain will not penetrate the storage room while in the air." This analysis and opinion were not included in Dr. Schipke's original report, and the deadline for submitting additional expert reports has passed. Further, defendants have not filed for leave to submit this new report. Dr. Schnipke may testify that she corrected

computational errors in her initial report and may testify regarding the results of these corrections. Dr. Schnipke may not, however, testify as to her new opinion on the distance of rain penetration.

    *iii. Erroneous Data and Assumptions*

Plaintiffs next argue that Kochan's and Schnipke's reports are unreliable because they "contain erroneous data and assumptions." The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 590. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id*. at 590. Again, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. As the 2000 advisory committee's note to Rule 702 observes, "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." And not all of the *Daubert* factors apply to every type of expert testimony. *See Kumho Tire*, 526 U.S. at 150. Instead, courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

Plaintiffs list these five errors in their memorandum:

> Kochan created a model of the Airline Property with a six to eight inch drop that did not exist at the time of Hurricane. Kochan miscalculated the arrival time of flood waters at the airline property. Schnipke miscalculated the mass fraction of water and the velocity of air used in her CFD analysis. Schnipke also relied on Kochan's incorrect model of the Airline building, incorrectly assumed that water and wind-driven rain would not travel beyond the immediate interior of the roll-up door. Finally, Schnipke wrongly assumed that the broken windows in the Airline Property were to the far left of the building.

The picture plaintiffs provide to disprove Kochan's assumption that the Airline property had a "six to eight inch drop" shows such a fall-off. (See R. Doc. 161, Ex. J.) Further, Dr. Schnipke has admitted that her Mass Fraction of Water computation was incorrect and has furnished plaintiffs with a supplemental report correcting the computation. The Court has already determined that Dr. Schnipke is allowed to testify as to her corrected computations.

The remaining errors alleged are not grounds for excluding Kochan's or Dr. Schnipke's reports outright. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)(quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Matters left for the jury's consideration

include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to. *See Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F.Supp.2d 908, 935 (W.D. Wis. 2007)("the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate findings; however, mistakes are miscalculations are not grounds for excluding evidence."(*citing Daubert*, 509 U.S. at 596)).

 *iv. Kochon's Qualifications*

Finally, plaintiffs argue that Kochon is "unqualified to testify regarding water and wind-driven rain intrusion based on a [computational fluid dynamic] analysis." "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 596). As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596 (*citing Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Kochon received a Bachelor of Science degree in Engineering from Catholic University in 1973 and has over thirty years of experience as a forensic engineer. "Mr. Kochan has handled physical loss causation determinations in connection with Hurricane Katrina, Hurricane Floyd, and Hurricane Isabel, as well as other hurricanes." He is qualified to give his forensic engineering opinions here.

Kochan relies on Dr. Schnipke's calculations to make his physical loss conclusions, but this is not grounds for exclusion. Experts are not required to prepare all the documents that support an opinion as long as the information is of the type reasonably relied on by experts in his field. Fed. R. Evid. 703; *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d. Cir. 2000)("[A]n expert may rely on data that [he] did not personally collect."); *In re James Assocs.*, 965 F.2d 160, 172 (7th Cir. 1992)("An expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him."). Further, "[n]ow it is common in technical fields for an expert to base an opinion in part on what a different expert believes. . . ." *Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002). There is, of course, a limit to how much an expert may testify about the expert opinion of another. An expert "is not permitted to be the mouthpiece of a scientist in a different specialty," *id.* at 614, but that is

-9-

not the case here.  Kochon has extensive experience working with HVAC systems, which defendants assert involves air flow dynamic analysis that is similar to the fluid dynamic analysis applicable in this case.  The Court and others have often held that a witness qualified as an expert is not strictly confined to his area of practice but may testify concerning related applications. *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991) (collecting cases); *see also Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 176-77 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air. Corp.*, 37 F.3d 1069 (5th Cir. 1996) (permitting mechanical engineer who had never designed a press brake to testify as to safety of brake design).  The Court is satisfied that Kochon's related experience sufficiently qualifies him to testify about the computational fluid dynamic analysis that supports his opinion.

The Court notes briefly that this is not a case in which an expert bases his opinion on another expert who is unavailable to testify at trial.  In that situation, the adverse party may face some prejudice because it has no opportunity to question the original proponent of the opinion.  Here, defendants intend to call Dr. Schnipke as a witness, and plaintiffs may fully cross-examine her about her calculations then.

**IV. Conclusion**

Plaintiffs Motion in Limine is DENIED for the reasons stated above.


New Orleans, Louisiana, this <u>28th</u> day of July, 2009.

```
           _____Sarah Vance_____
                    SARAH S. VANCE
              UNITED STATES DISTRICT JUDGE
```