UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IMPERIAL TRADING CO., INC., ET AL. | CIVIL ACTION |
| VERSUS | NO: 06-4262 |
| TRAVELERS PROPERTY CASUALTY CO. OF AMERICA | SECTION: R |

## ORDER AND REASONS

Before the Court is plaintiffs' Motion for Leave to Interview Jurors (R. Doc. 367). For the following reasons, the motion is DENIED.

### I. Background

The specifics of the underlying dispute between plaintiffs and defendant have been detailed in numerous previous orders and need not be revisited here. In August of 2009, this Court presided over a six-day jury trial regarding an insurance dispute that arose from commercial property damaged by Hurricane Katrina. Before the conclusion of the trial, the Court prepared a special verdict form for the jury to use in deliberations and to fill in once they reached their verdict. The completed form returned by the jury is attached as Exhibit 1. During closing statements, plaintiffs asked that the jury award (1) over $10 million in

1

damages for defendant's alleged breach of the insurance policy between the parties, (2) bad-faith penalties under LA. REV. STAT. § 22:658 for arbitrary and capricious failure to pay over $12 million within thirty days of receiving a satisfactory proof of loss, and (3) further bad-faith penalties under LA. REV. STAT. § 22:1220 for the $3.6 million in consequential damages plaintiffs allegedly suffered from defendant's failure to pay within sixty days of receiving a proof of loss. In the course of his closing statement, counsel for plaintiffs brandished the special verdict form and urged the jurors to enter specific amounts of damages for each category shown on the form.

On August 13, the jury returned a verdict of $1,757,588 in damages for breach of contract, apportioning the amount as follows:

```
Building and Appurtenant Signage:   $1,200,000
Contents (Including Software):      $400,000
Rental Value:                       $0
Debris Removal:                     $157,588
```

The jury also awarded penalties under § 22:658 for arbitrarily and capriciously failing to pay $1,250,000 within thirty days of receiving a satisfactory proof of loss. The jury did not award any bad-faith penalties under § 22:1220. After the foreman of the jury announced that there was a verdict, the Court had its deputy read the jury's verdict verbatim into the record. This included the jury's verdict as to each question on the special verdict form. The deputy then asked the jury, "Ladies and

gentlemen of the jury, is this your verdict?" The jury replied with "yes." The Court then asked counsel for the parties if either side wished to have the jury polled. Defense counsel asked the Court to poll the jury. Neither party disputes that each juror stated in open court that he or she agreed with the verdict read by the Court's deputy. The Court then ordered that the verdict be made part of the record and excused the jury.

According to plaintiffs, one of the jurors in the case visited plaintiffs' property later that afternoon and spoke to Freddie Bailey and Gabe Corchiani, employees of plaintiffs who testified during trial. During this interaction, the juror explained that she did not agree with the amounts announced in open court, and she did not understand how the amounts were calculated. She noted that she and two other jurors in the case attempted to contact plaintiffs' counsel after the trial, but were unable to locate them. Two of these jurors called the Court the next day, but the Court did not speak to them in any detail. In response, the Court called a hearing to order the parties and counsel from both sides not to have any further contact with the jurors. Counsel were told at this hearing that the Court would call the jurors in to investigate the matter. Another hearing was called later that afternoon after the Court determined that it was not appropriate to conduct a *sua sponte* inquiry into the verdict at that time, and that the issue could be addressed in

post-trial motions.

Plaintiffs now move for leave to interview the three jurors "for the purpose of obtaining sworn statements regarding the failure of the jury to render a unanimous verdict." (R. Doc. 367 at 1.)

**II. Discussion**

Plaintiffs move for leave under Local Rule 47.5E, "Interviewing Jurors," which states as follows:

> A. No juror has any obligation to speak to any person about any case and may refuse all interviews or comments;
>
> B. No person may make repeated requests for interviews or questions after a juror has expressed a desire not to be interviewed;
>
> C. Under no circumstances except by leave of court granted upon good cause shown shall any attorney or party to an action or anyone acting on their behalf examine or interview any juror. No juror who may consent to be interviewed shall disclose any information with respect to the following:
>
>> 1. The specific vote of any juror other than the juror being interviewed;
>>
>> 2. The deliberation of the jury; or
>>
>> 3. For the purposes of obtaining evidence of improprieties in the jury's deliberations.

A district court has discretion over a party's request for post-trial juror interviews, and the decision will not be disturbed absent abuse of that discretion. *See United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003). Although this Court has the

4

authority to determine whether a party has presented good cause for juror interviews, it will not find good cause if the interviews would be futile or if the affidavits cannot be admitted into evidence. The admissibility of juror testimony is controlled by Rule 606(b) of the Federal Rules of Evidence, which provides:

> **(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

As an initial matter, plaintiffs appear to be asserting two theories to support their request for juror interviews. They note that they seek to investigate "the failure of the jury to render a unanimous verdict." (R. Doc. 367 at 1.) They also contend that Rule 606(b)(3) allows an inquiry into "whether there was a mistake in entering the verdict onto the verdict form." (R. Doc. 367 at 7.)

With respect to plaintiffs' latter argument, Rule 606(b)(3) does not authorize broad investigations into jury verdicts. It

5

allows testimony as to mistakes *in entering the verdict onto the verdict form*. The Advisory Committee Notes state that this exception "is limited to cases such as where the jury foreperson wrote down, in response to an interrogatory, a number different from that agreed upon by the jury, or mistakenly stated that the defendant was guilty when the jury had actually agreed that the defendant was not guilty." FED. R. EVID. 606 advisory committee's note (quoting *Robles v. Exxon Corp.*, 862 F.2d 1201, 1208 (5th Cir. 1989)) (quotation marks omitted); *see also* 3 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 606.04[4][b] (2d ed. 2009) (noting that the exception in FED. R. EVID. 606(b)(3) concerns whether "the verdict reported was the result of a clerical mistake" and "the clerical issue of whether the agreed-on verdict was entered on the verdict form"); 27 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 6075.01 (2d ed. 1994 & 2009 supp.) (noting that "the breadth of this mistake exception should not be overestimated" and that it is limited to clerical errors).

Even pretermitting the question of whether this Court should consider the affidavits of Freddie Bailey and Gabe Corchiani that were obtained in violation of Local Rule 47.5E, plaintiffs have not made any showing that would satisfy the mistake exception. The Bailey and Corchiani affidavits state that the juror informed them that "she did not understand how the numbers were calculated for the verdict, and that she did not agree with the final

6

numbers read in court." (R. Doc. 367, Ex. A & B.) The confusion and disagreement of one or a handful of jurors is something entirely different from the entire jury agreeing on a figure and then accidentally entering another figure on the verdict form.

In the case of *Smith v. City of Seven Points, Tex.*, 608 F. Supp. 458 (E.D. Tex. 1985), the jury returned a verdict of $300,000 for a plaintiff who had been beaten by a police officer. After the trial, one of the six jurors contacted the deputy clerk of the court to state that the jury had intended to award $150,000. The court held that "there was reason to believe that the confusion in this case involved only one juror." *Id*. at 462. While *City of Seven Points* was decided before Federal Rule of Evidence 606 was amended to allow inquiries into mistakes in the verdict form, such an exception already existed in the Fifth Circuit. *See Univ. Computing v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 n.43 (5th Cir. 1974). The *City of Seven Points* court noted this exception, and stated that "[i]n such cases, all six jurors must agree that the verdict as entered differs from what they intended. If it appears that only one or two of the jurors was confused about the result, the court may not pursue an examination of the entire jury. This is because the court is prohibited from examining the factors that influenced an individual juror to assent to the verdict." 608 F. Supp. at 462.

Here, too, plaintiffs have provided no reason to think that

7

a mistake or misunderstanding, if any, extends beyond two or three jurors. The affidavits they have provided do not indicate that the jury unanimously agreed to *another* verdict separate from the one they announced and unanimously agreed to twice in open court, much less do they make any mention of the verdict form. Nor do they even state what the jurors in issue thought the verdict was supposed to be. Further, neither juror who called the Court said that all jurors agreed on another verdict. If anything, the affidavits plaintiffs have filed indicate only that the complaining jurors were confused about or disagreed with the damage calculations. The foreman of the jury entered the damage numbers onto the special verdict form, and when the entire form was read into the record, neither he nor any other juror gave any indication that any of the numbers entered were mistakes. Nor did any of the other jurors suggest this to the Court or to the parties after the trial. The Court accordingly does not find good cause for plaintiffs to inquire into whether the entire jury agreed on a different verdict than the one announced in court and reflected on the verdict form. Plaintiffs will not be allowed to conduct interviews for this purpose.

Plaintiffs also assert that good cause exists for conducting interviews into whether the jury failed to reach a unanimous verdict. They rely on the case of *Fox v. United States*, 417 F.2d 84 (5th Cir. 1969), in which the court found that "the affidavit

of a juror is admissible to show the true verdict or that no verdict was reached at all." *Id*. at 89. In that case, the jury was polled after announcing that a defendant had violated the Food, Drug, and Cosmetic Act. When the clerk of the court called each juror by name and asked if he or she assented to the verdict, one of the jurors "gave no audible response but simply looked at the floor without raising his head." *Id*. at 88. The court of appeals ruled that juror affidavits were admissible to establish that the silent juror had never assented to the verdict and that all the jurors thought a majority vote was sufficient to return a verdict. *Id*. at 88-89. It noted that

> [t]he affidavits of Larkin and the four other jurors, we feel, demonstrate clearly that there was never any unanimity expressed in open court in the poll of the jury and that the verdict purportedly returned in open court was not the verdict of each of the twelve jurors. By considering these affidavits, we do not impinge on the rule that the affidavit of a juror may not be used to impeach a verdict that has been announced in open court. It has long been well settled that the affidavit of a juror is admissible to show the true verdict or that no verdict was reached at all. That is precisely the situation we have here.

*Id*. at 89 (internal citations omitted).

*Fox*, which was decided before the enactment of Rule 606 of the Federal Rules of Evidence, does not support plaintiffs' argument. In holding that affidavits were allowed to demonstrate that a verdict was never reached, the court explicitly mentioned that its ruling did "not impinge on the rule that the affidavit of a juror may not be used to impeach a verdict that has been

9

announced in open court." *Id*.  There, unlike in the case before the Court, the poll itself did not indicate unanimous assent to the verdict.  The court specifically noted in *Fox* that it was "the duty of the district court in polling the jury to elicit a definite response and thereby eliminate all doubt as to whether the verdict of the jury is unanimous."  *Id*.

Furthermore, the *Fox* exception has been limited by later Fifth Circuit caselaw.  The facts of *United States v. Ortiz*, 942 F.2d 903 (5th Cir. 1991), are similar to the ones in this case.  The jury was polled after announcing a verdict of guilty, and each juror was polled four times, once for each defendant in the case.  Later, a juror contacted the court to indicate that despite her assent to the poll, she did not agree to the verdict.  She stated that two other jurors were in the same position, and affidavits from these jurors stated that they did not agree to the guilty verdict, but that they had assented to the poll because they were scared.  *Id*. at 909-912 & n.2.  In hearing a challenge to the validity of the verdict, the court noted that Rule 606 generally barred juror testimony, but there was an exception for clerical errors as well as an exception, recognized in *Fox*, when no unanimous verdict was reached.  *Id*. at 913.  The court held that

> [i]n certain circumstances, the *Fox* exception may allow the court to consider jurors' statements to determine whether a verdict was in fact reached.  The exception, however, is not so broad as to allow a juror to

10

> contradict four earlier statements made by that juror in
> open court, which unequivocally expressed agreement with
> the verdict.

*Id*. In addition, the court noted that "[i]n their attempt to retract their earlier verdicts delivered personally in open court, [the jurors] impermissibly seek to testify as to any matter or statement occurring during the course of the jury's deliberations," which would be inadmissible under Rule 606. *Id*. (quotation marks omitted); *see also* 3 MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE at § 606.04[4][b] ("Rule 606(b) bars a juror's testimony that he or she was mistaken or unwilling in assenting to the verdict."). Similarly, the inquiry proposed by plaintiffs would necessarily involve obtaining statements from jurors about matters that happened during deliberations.

Similar circumstances arose in *United States v. Straach*, 987 F.2d 232 (5th Cir. 1993), in which a jury returned a guilty verdict against a defendant on certain charges, and, when polled, each juror indicated agreement with the verdict. The next day, two jurors visited the defendant's attorney and provided affidavits that they believed the accused to be innocent on all counts and had stated so during deliberations. *Id*. at 236. The court noted that the affidavits contained improper testimony about the jury's deliberations, and also stated that "a jury verdict cannot be challenged as nonunanimous if the jurors agreed to the verdict when polled, unless some competent evidence is

11

presented which does not involve delving into the jurors['] actual deliberations." *Id*. at 242. Furthermore, in *United States v. Brito*, 136 F.3d 397 (5th Cir. 1998), a juror who had assented to a guilty verdict when polled in open court later alleged that her vote was coerced through threats and insults by other jurors. In holding that affidavits attesting to coercion from within the jury are inadmissible, the court observed that "[g]enerally, a verdict may not be challenged if the jurors were polled and agreed to the verdict" and that such a rule "prevents courts from delving into the internal deliberations of the jury." *Id*. at 414. Affidavits impeaching the verdict are admissible when the coercion comes from outside the jury. *Id*. There is absolutely no suggestion of that here.

These holdings are consistent with the notion that "[f]ederal courts have generally disfavored post-verdict interviewing of jurors" because of the potential to "denigrate jury trials by afterwards ransacking the jurors in search of some new ground, not previously supported by evidence, for a new trial." *Haeberle v. Tex. Int'l Airlines*, 739 F.2d 1019, 1021 (5th Cir. 1984) (quoting *United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976)) (quotation marks omitted); *see also United States v. Stover*, 329 F.3d 859, 865 (D.C. Cir. 2003) ("Rule 606(b) similarly bars eliciting juror testimony here to impeach the verdict against Stover, which was unanimously rendered, as

the contemporaneous polling confirmed, five days before the judge [was informed that jurors wanted to revisit the verdict].");  *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980) ("Once a verdict has been delivered and accepted in open court, and the jury is polled and discharged, jurors may not claim that their assent was mistaken or unwilling."); *United States v. Chereton*, 309 F.3d 197, 200 (6th Cir. 1962) ("Where jurors in their jury room and in open court gave their unanimous assent to a verdict which was accepted by the court and the jury discharged, it is too late thereafter for individual jurors to change their minds and claim that they were mistaken or unwilling in the assent which they gave.").

Plaintiffs, however, seek to distinguish *Ortiz*, *Straach*, and *Brito* by stating that they are not moving for a new trial or trying to impeach the verdict. They seek only to interview jurors, and juror interviews were obtained in a number of these and similar cases. It cannot be denied that, in several cases, affidavits from former jurors were obtained before the Fifth Circuit ruled the them inadmissible. But under the Local Rule, plaintiffs must establish good cause before they can interview jurors. The observation that juror affidavits were obtained before being rejected in these cases does not constitute good cause. If these affidavits are not admissible to impeach the verdict, as Fifth Circuit precedent clearly establishes,

13

plaintiffs cannot show good cause for taking them.

In addition, plaintiffs seek to distinguish these cases further on the grounds that they are criminal cases, and in criminal cases a juror is asked only to find the defendant guilty or not guilty. They claim that civil cases often involve complex calculations of damages, and that asking the jury members twice whether they agree with the numbers is therefore "less reliable" than agreement upon a verdict in a criminal proceeding. No authorities appear for this proposition, and the Court declines to adopt a rule that would impose a higher standard for the expression of unanimity in a damages determination than in a criminal case, in which the defendant's liberty is at stake. Nor does the Court accept plaintiffs' suggestion that *Ortiz* is distinguishable because the jury was polled four times in that case, and the jurors in this case were asked once collectively and then once individually whether they agreed with the verdict. Nothing in *Ortiz* implies that the outcome would be different had the jury been polled fewer than four times.

The case of *United States v. Dotson*, 817 F.2d 1127 (5th Cir. 1987)*, amended on other grounds by* 821 F.2d 1034 (5th Cir. 1987), does not conflict with these cases. In that case, the jury convicted the defendant on numerous counts of an indictment, after which "[t]he district court informally polled the jury and received in response a nodding of twelve heads." 817 F.2d at

1129. That evening, two jurors contacted the judge to assert that the jury had unanimously voted to acquit the defendant of one of the charges upon which he was convicted. The trial judge telephoned the foreman, who confirmed the vote, and the judge corrected the verdict accordingly. *Id*. Unlike the case before this Court, however, the court of appeals in *Dotson* held that "[t]he record in this case does not indicate a lack of unanimity, but rather a unanimous jury whose opinion differed from that reflected in the verdict." *Id*. Despite the "sketchy poll of the jury," the district court's correction of the clerical error was affirmed. *Id*. As explained above, plaintiffs have made no showing that the verdict is the result of a clerical error, or that the belatedly asserted disagreement is shared by all jurors.

Jurors are given as much time as is necessary to deliberate and reach a unanimous verdict, and each juror has "the right even in the jury box to renounce his or her decision in the jury room and to express a dissent which would have returned them to the jury room for further deliberations." *Posey v. United States*, 416 F.2d 545, 554 (5th Cir. 1969). No juror here did so.

The most difficult decisions that a Court can make require it to balance the need for finality and procedural regularity against the possibility, however faint, of injustice. Any effort to draw a proper line between the two will never be perfect, nor will it be satisfactory to all involved. Nevertheless, the

Court's duty is to ensure that one side of the balance does not swallow the other. In the absence of clerical error in entering a verdict into a verdict form, or improprieties of the nature described in Rule 606, any rule that a juror could impeach a sworn statement she made in open court agreeing with a verdict would open the door to the overturning of verdicts based on second thoughts, changed minds, improper influence, and hindsight. There would be no principled boundaries for the application of such a rule, and no verdict would be truly final. Jury deliberations would become the fodder for fishing expeditions launched by those disappointed with the unfavorable verdicts.

Accordingly, plaintiffs have not shown good cause for leave to conduct juror interviews. There is no evidence that the supposed disagreement arose from a clerical error, and the affidavits they seek would be inadmissible under clear Fifth Circuit precedent because they seek to impeach a verdict that the jury twice stated under oath represents its unanimous verdict. Finally, this matter could not be meaningfully or reliably inquired into without delving into the deliberations of the jury, which is forbidden by Rule 606.

**III. Conclusion**

For the foregoing reasons, plaintiffs' Motion for Leave to

Interview Jurors is DENIED.

New Orleans, Louisiana, this \_\_\_10th\_\_\_ day of September, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE